FILED
CLERK, U.S. DISTRICT COURT

DEC - 9 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                               DEPUTY

"O"

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          WESTERN DIVISION

11

12   ENRIQUE CRISTOBAL,               )   Case No. CV 08-01092 DOC (AN)
                                      )
13                 Petitioner,        )
                                      )   REPORT AND RECOMMENDATION OF
14        v.                          )   UNITED STATES MAGISTRATE JUDGE
                                      )
15   ANTHONY HEDGPETH, Warden,        )
                                      )
16                 Respondent.        )
     _____)
17

18

19        This Report and Recommendation is submitted to the Honorable David O. Carter,

20   United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the

21   United States District Court for the Central District of California.   For the reasons

22   reported below, the Magistrate Judge recommends that the Court deny the Petition for

23   Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254

24   ("Petition") and dismiss this action with prejudice.

25   ///

26   ///

27   ///

28

# I. BACKGROUND

**A.   State Court Proceedings**

On February 15, 2005, Enrique Cristobal ("Petitioner") was convicted by jury trial in the California Superior Court for the County of Los Angeles (Case No. PA044991) of four counts of attempted murder, one count of firing into an occupied motor vehicle, and four counts of assault with a firearm, in violation of California Penal Code sections 664/187(a), 246, and 245(a)(2), respectively.   The jury found true allegations Petitioner committed the crimes for the benefit of a criminal street gang, in violation of section 186.22(b)(1)(A).  (Clerk's Transcript ("CT") 400-08; Pet. 2.)  On May 2, 2005, Petitioner was sentenced to life plus twenty years in state prison.  (CT 455-63; Pet. 2.)

Petitioner's judgment of conviction was affirmed on direct review.  (Lodgments ("LD") 6, 8; Case Nos. B183161, S147876.)  Petitioner did not seek collateral review in the state courts.  (Pet. 6.)

**B.   Pending Proceedings**

On February 19, 2008, Petitioner, through his retained counsel, filed his pending Petition raising two claims for relief challenging his conviction. (Pet. 5-6.) Respondent has filed an Answer contending that the admission of gang expert testimony claim in ground one is procedurally defaulted and that all of the claims otherwise lack merit. (Answer 7-21.)  Petitioner filed a Reply and the matter now stands submitted.

# II. DISCUSSION

**A.   Procedural Default**

As a threshold matter, Respondent argues Petitioner is procedurally barred from seeking relief on ground one because Petitioner waived this issue by failing to raise a contemporaneous objection in the trial court.   (Answer 11-13.)   In ground one, Petitioner claims the trial court violated his right to due process by allowing Officer Hernandez, the prosecution's expert witness, to testify that, in his opinion, Petitioner

1    committed the crime to benefit a gang. (*Id.*)

2         For a claim to be procedurally barred, the opinion of the last state court rendering
3    a judgment in the case must clearly and expressly state that its judgment rests on a state
4    procedural bar. *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038 (1989); *see also*
5    *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546 (1991); *Thomas v.*
6    *Goldsmith*, 979 F.2d 746, 749 (9th Cir. 1992).

7         Under California's contemporaneous objection rule, a petitioner's failure to
8    interpose a specific and timely objection in the trial court on the ground advanced on
9    review independently serves as a procedural bar to consideration of the issue by the
10   appellate courts. *See, e.g., People v. Alvarez*, 14 Cal. 4th 155, 186 (1996); *People v.*
11   *Champion*, 9 Cal. 4th 879, 918-19 (1995); *People v. Johnson*, 6 Cal. 4th 1, 51 (1993).

12        Here, the court of appeal "clearly and expressly" invoked the contemporaneous
13   objection rule as the basis for denying ground one. (LD 6 at 9-11.)  It makes no
14   difference that the court of appeal also addressed this defaulted claim on the merits in
15   the alternative. *See Harris*, 489 U.S. at 264 n.10; *Carringer v. Lewis*, 971 F.2d 329, 333
16   (9th Cir. 1992); *Thomas v. Lewis*, 945 F.2d 1119, 1122-23 (9th Cir. 1991).  The failure
17   to comply with a state's contemporaneous objection rule results in a procedural default
18   that bars federal consideration of the issue unless the petitioner can demonstrate both
19   "cause" for his failure to raise the objection at trial and actual "prejudice" accruing from
20   the error. *See Coleman*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.
21   Ct. 2497 (1977); *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1989).  In order to
22   demonstrate "cause" for a procedural default, a petitioner must show "that some
23   objective factor external to the defense impeded counsel's efforts to comply with the
24   State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639 (1986).

25        As noted above, Respondent has alleged California's contemporaneous objection
26   rule is an independent and adequate bar to federal habeas review of ground one (Answer
27   11-13), therefore, Petitioner has the burden to show the contemporaneous objection rule
28   is inadequate by, for example, citing authority showing the rule has not been applied

3

1  consistently. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). Petitioner has
2  not met his burden despite having had the opportunity to do so. Additionally, Petitioner
3  has failed to meet his burden of showing both "cause" for his failure to raise the
4  objection at trial and actual "prejudice" accruing from the error. *See Coleman*, 501 U.S.
5  at 750; *Wainwright*, 433 U.S. at 87; *Hines*, 658 F.2d at 673. Based upon Petitioner's
6  failure to meet his burden of showing the contemporaneous objection rule is not
7  consistently applied, combined with his failure to show cause and prejudice for his
8  procedural default, this Court finds Petitioner is procedurally barred from obtaining
9  federal habeas relief on the admission of expert testimony claim in ground one.
10 *Coleman*, 501 U.S. at 750; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).

11      Alternatively, in the interests of judicial economy and based upon the strong
12 preference for disposing of claims on the merits, this Court will also consider the merits
13 of ground one because, even assuming that Petitioner was not procedurally barred from
14 raising this claim, the claim clearly lacks merit for the reasons discussed below. *See*
15 *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517 (1997) (noting that, in the
16 interest of judicial economy, courts might resolve easier matters where complicated
17 procedural default issues exist); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir.
18 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of
19 habeas petitions if they are, on their face and without regard to any facts that could be
20 developed below, clearly not meritorious despite an asserted procedural bar.")

21 **B.   Standard of Review**
22      The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides
23 that federal habeas relief "shall not be granted with respect to any claim that was
24 adjudicated on the merits in State court proceedings unless the adjudication of the claim
25 -- (1) resulted in a decision that was contrary to, or involved an unreasonable
26 application of, clearly established Federal law, as determined by the Supreme Court of
27 the United States; or (2) resulted in a decision that was based on an unreasonable
28 determination of the facts in light of the evidence presented in the State court

4

1   proceeding." 28 U.S.C. § 2254(d)(1)-(2). The key to triggering AEDPA's deferential

2   standard is a previous "adjudicat[ion] on the merits in State court proceedings." A state

3   court's decision is not contrary to, or an unreasonable application of, clearly established

4   Federal law if there is no Supreme Court precedent holding the petitioner has a

5   Constitutional right to the requested habeas relief. *See Carey v. Musladin*, 549 U.S. 70,

6   127 S. Ct. 649, 654 (2006) (absent a Supreme Court holding on the prejudicial effect of

7   spectators' courtroom conduct, the state court's decision rejecting this claim was not

8   contrary to, or an unreasonable application of, clearly established Federal law); *Wright*

9   *v. Van Patten*, --- U.S. ---, 128 S. Ct. 743, 746-47 (2008) ("Because our cases give no

10  clear answer to the question presented, let alone one in [the petitioner's] favor, 'it

11  cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal

12  law.'"); *see also Plumlee v. Masto*, 512 F.3d 1204 , 512 F.3d 1204, 1210 (9th Cir. 2008)

13  (en banc) ("What matters are the holdings of the Supreme Court, not the holdings of

14  lower federal courts"); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004).

15      A state court decision is "contrary to" clearly established Federal law where the

16  state court applies a rule that contradicts the governing law set forth by the Supreme

17  Court, or confronts a set of facts that is materially indistinguishable from those in a

18  decision of the Supreme Court and nevertheless arrives at a different result. *Williams*

19  *v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495 (2000). The Supreme Court has

20  emphasized that citation of its cases is not required so long as "neither the reasoning nor

21  the result of the state-court decision contradicts (its governing decisions)." *Early v.*

22  *Packer*, 537 U.S. 3, 8, 123 S. Ct. 362 (2002); *see also Bell v. Cone*, 543 U.S. 447, 455,

23  125 S. Ct. 847 (2005). What matters is whether the last reasoned *decision* reached by

24  the state court was contrary to controlling Federal law, not the intricacies of the

25  analysis. *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002).

26      A state court decision involves an "unreasonable application of" clearly

27  established Federal law where the state court identifies the correct governing legal

28  principle from decisions of the Supreme Court but unreasonably applies that principle

1     to the facts of the case. *Williams*, 529 U.S. at 407-08. To find that a state court has

2     unreasonably applied Supreme Court precedent, a federal habeas court may not merely

3     conclude that, in its independent judgment, the relevant state court decision was

4     incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S. Ct. 1166 (2003).

5     Rather, the state court's application of clearly established Federal law must be

6     *objectively unreasonable* in view of the operative jurisprudence arising from the

7     Supreme Court's holdings, not *dicta*, at the time the state court rendered its decision.

8     *Id.* at 71-75.

9         AEDPA's deferential standard applies to the two claims raised in the pending

10     Petition. The California Court of Appeal denied the claims on the merits in a reasoned

11     opinion on direct appeal, and the California Supreme Court denied the claims without

12     comment. (LD 6, 8.) While the state high court's denial was silent, it still constitutes

13     a denial "on the merits" for purposes of federal habeas review, *Hunter v. Aispuro*, 982

14     F.2d 344, 348 (9th Cir. 1992), and Petitioner's claims are deemed to have been rejected

15     for the same reasons given in the last reasoned decision, which in this case was the

16     Court of Appeal's unpublished opinion on direct review. (LD 6.) *Ylst v. Nunnemaker*,

17     501 U.S. 797, 805, 111 S. Ct. 2590 (1991).

18     **C.**     **Facts Established at Trial**

19         Petitioner is not contesting the sufficiency of the evidence supporting his

20     convictions. Accordingly, this Court adopts the state court of appeal's following

21     summary of its factual determinations, which are entitled to a presumption of

22     correctness where, as here, the petitioner has not rebutted the factual determinations

23     with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Taylor v.*

24     *Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *Lara v. Ryan*, 455 F.3d 1080, 1082 (9th

25     Cir. 2006) (adopting the state court of appeal's determination of the facts where the

26     petitioner did not challenge them with clear and convincing evidence); *Moses v. Payne*,

27     543 F.3d 1090, 1093 n.1 (9th Cir. 2008) (same).

28     ///

**I. The People's Case-in-chief**

On the evening of June 12, 2003, O.G. drove the family Honda sports utility vehicle (SUV) near his residence in the San Fernando Valley. He drove friends M.L. and R.L. to pick up J.M. at a Burger King on Chase Street. All of these youths lived in a gang neighborhood, but were nonaffiliated. O.G. stopped at the curb to pick up J.M. J.M. got into the SUV and pointed out that [Petitioner], "Troubles," [footnote omitted] and three other occupants of a black Acura were driving out of the Burger King's driveway ahead of them. O.G. testified that J.M. appeared to be "really" scared and told O.G., "We got to get out of here."

O.G. looked over and saw [Petitioner] driving the Acura and Troubles sitting in its front seat. O.G. sped off, running a red light. The Acura pulled out into traffic behind the SUV and also ran the red light. O.G. was driving at a high rate of speed, and the Acura kept up with him. O.G. and J.M. testified that at Reseda Boulevard, [Petitioner] and Troubles put their arms out of the windows of the Acura. Both [Petitioner] and Troubles had firearms in their hands. The other two youths in the SUV saw Troubles prepare to shoot at them. Thereafter, they heard five to seven shots. O.G. turned left onto Wilbur Avenue, and the Acura turned off in another direction.

O.G. dropped off R.L. and immediately drove to the police station to report the shooting. The police observed two to three bullet holes in the rear of his SUV. On the way home, O.G. and his father observed [Petitioner] and Troubles drive by them in the Acura. O.G. telephoned 911. The police detained the Acura's occupants, and O.G. made a field identification of [Petitioner] and Troubles. At the detention, the police found only [Petitioner]'s young brother Christopher occupying the rear seat.

After his arrest, [Petitioner] told the police that he was a Brown Pride Sureno gang member and that his moniker was "Little 'G.' " Further evidence was introduced during the trial regarding the victims' various identifications of [Petitioner] and Troubles and that Troubles was a Brown Pride Sureno gang member.

At trial, O.G. explained that the Brown Pride Sureno gang claimed an area up the street from him. R.L. lived there. O.G. had seen Troubles there once months earlier. At that time, Troubles had identified his gang membership and told O.G. that he and R.L. had to "take it somewhere else" as they were not gang members. O.G. had ignored Troubles and continued to frequent the area. At trial, R.L. testified that when the youths encountered the Acura, J.M. had pointed out Troubles to O.G. and said, "Hey, that one, that one guy that you had problems with." R.L. said that at that point, O.G. had "panicked." O.G. said, "Get us out of here," and hit the gas.

Los Angeles Police Officer David Hernandez, a local gang officer, testified to the sociology and psychology of criminal street gangs and provided much of the evidence about the probable motive for the shooting. The officer also testified to the evidence supporting the section 186.22 gang enhancement. In reply to hypothetical questions, the officer opined that the circumstances of the shooting suggested gang activity and that the shooting was committed "to benefit" a criminal street gang.

**II.  The Defense**

In defense, [Petitioner] denied the shooting and gang membership and claimed an alibi, i.e., that during the shooting he was at home with his family. His mother and father corroborated his claims. [Petitioner]'s mother was impeached with her earlier statements that during the shooting, [Petitioner] was driving the family Acura in the company of his younger

brother Christopher, age 13. At the time of trial, Christopher was in Mexico.

Two private investigators, former Los Angeles police officers, testified in defense. Steven Strong, who has had gang expertise, testified hypothetically to facts indicating that [Petitioner] was not a gang member. He also testified that he had interviewed [Petitioner] and had concluded that [Petitioner] was not a gang member. Strong pointed out that during the instant investigation the police had ignored usual investigative practices by failing to test the victims and the arrestees for gunshot residue. He opined that since there was no gang claim yelled out during the shooting, the shooting may well have been committed for personal reasons.

During cross-examination, Strong agreed that the main objective of a gang is to commit crime. He also agreed that the more brazen the crime a gang member commits and the more work he puts in for the gang, the more status he has within a gang. Strong noted that "putting in work" means committing crime, and one notorious way of gaining status within a gang is to engage in a drive-by shooting. He said in his experience, drive-by shootings almost always involve gang activity.

Adalberto Luper, a former homicide detective, testified to his opinion that the bullets' trajectory suggested that the bullets were not fired from another vehicle. He also expressed his opinion that the entire object of shooting at a vehicle was to kill its occupants.

[Petitioner]'s employer, Mija Ho, testified that after 2002, [Petitioner] had worked for her as a painter at least 40 hours a week, and often longer. She found him to be quiet, honest, compliant, reliable, and hard-working. Ho's testimony was the primary basis for Strong's opinion that [Petitioner] was not a gang member; Strong gave his opinion that it was highly unusual for a youth to be a gang member and also be working

1    40 hours or more a week.

2    (LD 6 at 2-5.)

3    **D.    Admission of Gang Expert Testimony (Ground One)**

4         As discussed above, the Court has already found Petitioner is procedurally barred

5    from raising this claim, and the Court also finds it fails on the merits even if the

6    procedural bar analysis was inapplicable for the following reasons.

7         Petitioner claims the trial court violated his right to due process by allowing

8    Officer Hernandez to give certain opinion testimony in response to a hypothetical

9    question posed by the prosecutor, specifically, his opinion that the circumstances of the

10   shooting suggested gang activity and the shooting was committed for the benefit of a

11   gang.  (Pet. 5; Reply 14-15.)  He contends the admission of this opinion testimony

12   violated his due process rights because it bore directly upon the ultimate facts and

13   merely set forth Officer Hernandez's subjective opinion about Petitioner's guilt.  (*Id.*)

14        The court of appeal explained that, in addition to being procedurally defective,

15   ground one failed on the merits because, contrary to Petitioner's assertion, Officer

16   Hernandez testified "that the shooting appeared to constitute gang activity" and his

17   testimony was "relevant to prove motive and intent, as well as the elements of the gang

18   enhancement [charge]."  (LD 6 at 10.)

19        Under California law, evidence of gang membership is admissible to show both

20   intent and motive. *People v. Williams*, 16 Cal. 4th 153, 194 (1997); *People v. Sandoval*

21   4 Cal. 4th 155, 175 (1992); *People v. Olguin*, 31 Cal. App. 4th 1355, 1369-1370 (1994),

22   *overruled on other grounds by People v. Cromer*, 24 Cal. 4th 889, 901 n.3 (2001).

23   Likewise, under federal law, evidence of gang affiliation is admissible if it is relevant

24   to a material issue.  *See United States v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir.

25   2000). Motive is a material issue. *See, e.g., United States v. Santiago*, 46 F.3d 885, 889

26   (9th Cir. 1995) (motive).  Even if gang evidence was admitted erroneously, the error

27   must have "had substantial and injurious effect in determining the jury's verdict" in

28   order to warrant habeas relief.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.

Ct. 1710 (1993).  In applying the *Brecht* harmless error standard, a habeas court must determine whether the error had substantial influence on the conviction, not whether there was substantial evidence to convict. *See Hanna v. Riveland*, 87 F.3d 1034, 1039 (9th Cir. 1996).

This Court does not find the admission of gang evidence violated Petitioner's due process rights for three reasons.  First, the Court concurs with the state courts' findings and conclusions regarding the gang evidence.  Under California Evidence Code section 801, expert opinion testimony may only be "[b]ased on matter (including his special knowledge, skill, experience, training, and education)" that is not admitted into evidence and on evidence that is ordinarily inadmissible as long as the material is reliable and of a type reasonably relied upon by experts in that specific field.  *People v. Gardeley*, 14 Cal. 4th 605, 618-19 (1996).  The record shows Officer Hernandez's expert opinion in response to the hypothetical questions on gang culture was within his scope of expertise.  During direct examination, evidence was established that Officer Hernandez had been employed with the Los Angeles City Police Department for almost sixteen years and had been working extensively with the gang division for about five years. (Reporter's Transcript ("RT") 2177.)  In his sixteen years working on patrol and working in specialized gang units, Officer Hernandez had contacted "thousands of individuals" who were either involved or associated with gang activity.  (RT 2178.) Officer Hernandez had also attended various training classes and conferences on gangs. (RT 2178.) Moreover, the hypothetical questions posed by the prosecutor were properly admitted because they were "rooted in facts shown by the evidence." *Id.* at 619-20 ("an expert may render opinion testimony on the basis of facts given in a hypothetical question that asks the expert to assume their truth.  Such a hypothetical question must be rooted in facts shown by the evidence.") The record shows the hypothetical questions were based on the same facts of the attempted murder and assault with a firearm on the four young men in the SUV vehicle by members of the Brown Pride Surenos ("BPS") gang.  (RT 2211.)  The hypothetical scenario also used "Trouble," as a hypothetical

1   documented gang member with the hypothetical "Brown Pride Gang." (RT 2211.)

2          Second, Officer Hernandez's testimony also provided evidence necessary to

3   establish Petitioner's motive and intent to commit an attempted murder and gang

4   enhancement charges. *See Takahashi*, 205 F.3d at 1164; *Santiago*, 46 F.3d at 889;

5   *Windham v. Merkle*, 463 F.3d 1092, 1103 (9th Cir. 1998). As the record demonstrates,

6   on direct examination, Officer Hernandez testified to the general structure and culture

7   of a criminal street gang. (RT 2179-99.) He explained that gang members commit

8   crimes to gain status within their gang. (RT 2181-82, 2192.) He also explained that

9   criminal street gangs rely on committing crimes to intimidate the residents and control

10  their neighborhood "turf." (RT 2180-82.) Officer Hernandez further expressed his

11  opinion that gang members engage in retaliation when they feel other gang members or

12  community members are "disrespecting" their own members. (RT 2185.) He also

13  expressed his expert opinion about the BPS gang. He described, among other things,

14  their turf, their known hand gang sign, and identified Troubles as a documented BPS

15  member but acknowledged that Petitioner was not. (RT 2200-11.)

16         In response to the prosecutor's hypothetical questions as to whether Officer

17  Hernandez had "an opinion as to why this crime was committed," Hernandez opined

18  that the shooting suggested gang activity and was committed for the benefit of a gang.

19  (RT 2211-13, 2176-77.) Officer Hernandez's response provided a general explanation

20  that ignoring a gang member's instruction would lead to retaliation, and that the

21  shooting is a classic example of gang retaliation. (RT 2211-12.) From this expert

22  testimony by Officer Hernandez, the jury could reasonably conclude that the five to

23  seven shots that were fired on the four men in the SUV were committed in an attempt

24  to kill the four men in the car because at least two of them had ignored the gang

25  member's warnings to stay away for their territory and, therefore, the crime was

26  committed "for the benefit of, at the direction of, or in association with" that gang, and

27  "with the specific intent to promote, further, or assist in . . . criminal conduct by gang

28  members" as specified in the charges for the attempted murder and gang enhancements.

1   Cal. Penal Code §§ 664/187, 186.22(b)(1). Because the gang evidence was admissible

2   and relevant, its admission cannot be said to have violated due process. *See Estelle v.*

3   *McGuire*, 502 U.S. 62, 70, 112 S. Ct. 475 (1991) (where the challenged evidence is

4   relevant to an issue in the case, its admission cannot be said to have violated the

5   defendant's due process rights).

6          Finally, as the court of appeal reasonably determined, even if Petitioner had

7   alleged the admission of the gang expert testimony was a violation of his constitutional

8   right, he falls grossly short of showing the error had a "substantial and injurious effect

9   or influence in determining the jury's verdict" because there was still other ample

10  evidence that Petitioner committed the crime for the benefit of a gang. *Brecht*, 507 U.S.

11  at 637; *Polk v. Sandoval*, 503 F.3d 903, 912-13 (9th Cir. 2007) (citing *Brecht*); *Fry v.*

12  *Pliler*, --- U.S. ---, 127 S. Ct. 2321, 2328 (2007). O.G. testified that he ignored repeated

13  warnings to stop hanging out in the BPS gang territory given by Troubles, a known

14  documented gang member. O.G. also testified that, while he and his friends J.M. and

15  R.L. were driving in the BPS gang turf on the night of the shooting, they saw Petitioner

16  and Troubles driving in the Acura. J.M. appeared "really" scared and said, "We got to

17  get out of here." R.L. testified that O.G also "panicked" and yelled, "[g]et us out of

18  here]" and a high-speed chase between both cars ensued. (RT 946-48, 953-54, 958-61,

19  1301-02.) Thus, there was strong evidence that the crime was committed for the benefit

20  of a gang and any alleged error in Officer Hernandez's gang testimony was harmless.

21         Based on the foregoing, this Court finds the state courts' denial of ground one

22  was not contrary to, or an unreasonable application of, clearly established Federal law,

23  and it was based upon a reasonable determination of the facts. Accordingly, Petitioner

24  is not entitled to relief on ground one.

25  ///

26  ///

27

28

13

1    **E.      Reopening Closing Argument (Ground Two)**

2          Petitioner argues the trial court violated his right to due process when the court

3    reopened final closing arguments for the parties to address the jury's questions on the

4    legal theory of aiding and abetting. (Pet. 5.)

5          In her closing argument, the prosecutor argued that Petitioner was guilty of

6    attempted murder for personally shooting at the victims, and alternatively, Petitioner

7    was equally guilty of attempted murder if the jury found Petitioner aided and abetted

8    another during the shooting.  (RT 3418-24.)   During jury deliberations, the jury

9    submitted notes to the court asking for clarification on the theory of aiding and abetting:

10   "[w]e are having some trouble interpreting the law.  If we find [Petitioner] guilty of

11   aiding and abetting, does that mean that we have to find him guilty of counts 1 [through]

12   4. . . ."  (CT 324.)   The jury also inquired, "[i]f we find [Petitioner] Not Guilty on

13   counts 1 [through] 4 and 5 [through] 9, can we find him guilty on aiding and abetting

14   charge?   No count specifically states this."   (CT 325.)   Over defense counsel's

15   objection, the trial court found the original jury instructions on aiding and abetting were

16   adequate. But in an effort to help resolve the jury's apparent need for clarification about

17   the parties' respective positions on the aiding and abetting charge, the trial court

18   directed the parties to give supplemental closing arguments on this issue. (RT 3904-09.)

19         Ground two fails to allege a deprivation of federal rights.  Petitioner's challenge

20   to the reopening of final closing argument is based exclusively on state law as construed

21   under California Penal Code section 1138.  As noted above, the court of appeal denied

22   this claim pursuant to state law (LD 6 at 8-12), and this Court is bound to respect a

23   state-law finding made by a state court. *McGuire*, 502 U.S. at 67-68.

24         Moreover, the record shows Petitioner's federal due process rights were not

25   violated. It is well-established that "[w]hen a jury makes explicit its difficulties [about

26   a legal theory] trial judge should clear them away with concrete accuracy." *Bollenbach*

27   *v. United States*, 326 U.S. 607, 612-13 (1946). However, "the precise manner by which

28   the court fulfills this obligation [in responding to jury questions] is a matter committed

1　to its discretion." *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003). The record

2　shows that, before jury deliberations, the trial court charged the jury with CALJIC Nos.

3　3.00 and 3.01 concerning aiding and abetting, and that Petitioner did not object to these

4　instructions as given. (RT 3669-70.) Nonetheless, the jurors' questions indicated they

5　were experiencing some confusion and the trial court concluded the best way to remedy

6　the problem was through supplemental closing arguments. As aptly noted by the court

7　of appeal, "apparently, the jury did benefit from further argument because it made no

8　further inquiries of the trial court and soon thereafter returned its guilty verdicts." (LD

9　6 at 19.) Based on the foregoing analysis, the trial court's determination to conduct

10　further final arguments were "well within the bounds of the Constitution" and "a

11　permissible exercise of discretion." *Johnson*, 351 F.3d at 998.

12　　　　There is also no merit to Petitioner's claim that the trial court improperly allowed

13　the prosecutor to argue a new aiding and abetting theory in her supplemental closing

14　argument. The record clearly establishes Petitioner had notice of the charges and

15　theories to present his defense. The charging Information and the preliminary hearing

16　testimony apprised Petitioner that he could be found guilty of aiding and abetting. O.G.

17　and R.L. both identified Petitioner as the driver of the Acura and that he was

18　brandishing a gun out of his car window just before they heard multiple gun shots.

19　Indeed, the record reveals that, by the time the prosecutor mentioned the theory of

20　aiding and abetting in her supplemental closing argument, the theory had already been

21　discussed and addressed on at least three previous occasions during (1) the trial court's

22　charge to the jury with aiding and abetting instructions; (2) the prosecutor's explanation

23　of the theory in her original closing argument; and (3) defense counsel's original closing

24　argument. (RT 3601-09, 3418-24, 3669-70, 3601-09.)

25　　　　Accordingly, the state courts' rejection of Petitioner's due process claim in

26　ground two was not contrary to, or an unreasonable application of, clearly established

27　Federal law, and it was based on reasonable determination of the facts. Petitioner is not

28　entitled to habeas relief on ground two.

## III. RECOMMENDATION

In accordance with the foregoing, IT IS RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered dismissing this action with prejudice.


Dated:   December 9, 2008

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.
DATED: 12-9-08
J. DeBose
DEPUTY CLERK

16